COMMONWEALTH vs. CLARENCE THAYER
(and nine companion cases[1]).

No. 92-P-528.

Middlesex. September 10, 1993. - December 9, 1993.

Present: GILLERMAN, KAPLAN, & IRELAND, JJ.

Further appellate review granted, 416 Mass. 1111 (1994).

Rape. Practice, Criminal, Instructions to jury, Lesser included offense, Verdict. Evidence, Fresh complaint, Expert opinion. Witness, Expert.

At the trial of indictments charging forcible rape of a child under sixteen years of age (G. L. c. 265, § 22A), it was an abuse of discretion for the judge, on her own initiative, to instruct the jury with respect to the lesser included offense of statutory rape (G. L. c. 265, § 23), where the evidence did not provide the jury with a rational basis for convicting the defendants of statutory rape while acquitting them of forcible rape [601-607]; accordingly, this court set aside the verdicts of guilty of statutory rape and remanded the cases for retrial of so much of the indictments as charged statutory rape [607-608].

At the trial of indictments charging forcible rape of a child under sixteen years of age and indecent assault and battery on a child under fourteen years of age, evidence of the victims' statements was properly admitted under the fresh complaint doctrine. [608]

At a criminal trial, the judge acted within her discretion in qualifying an experienced psychiatric social worker as an expert to testify on the behavioral characteristics of sexually abused children. [608-609]

INDICTMENTS found and returned in the Superior Court Department, four on September 6, 1989, and six on December 12, 1990.

The cases were tried before *Barbara A. Dortch*, J.

*Carlo Obligato*, Committee for Public Counsel Services, for Clarence D. Thayer.

*Daniel A. Less*, Assistant District Attorney, for the Commonwealth.

*Lawrence R. Glynn*, for Isabel Thayer, submitted a brief.

---

[1]Three are against Clarence Thayer; six are against Isabel Thayer.

GILLERMAN, J. Clarence Thayer (Clarence) and his wife Isabel Thayer (Isabel) were indicted and tried on charges of (i) forcibly raping Jill and Patty,[2] both under the age of sixteen, see G. L. c. 265, § 22A, and (ii) indecent assault and battery on a child under the age of fourteen, see G. L. c. 265, § 13B, against the same children. After a seven-day joint trial, the defendants were convicted of the lesser included offense of statutory rape, see G. L. c. 265, § 23, and of the indecent assault and battery charges.[3] The lesser included offense instruction was given by the judge sua sponte,[4] without explanation, after the jury began its deliberations and over the objections of Clarence and Isabel.[5] We conclude that the lesser included offense instruction should not have been given, and that the verdicts of guilty of statutory rape must be set aside.

The Commonwealth introduced evidence from which the jury could have found the following facts. On more than one occasion between 1985 and March 1989, the defendants sexually abused their two young daughters, Patty and Jill. When the abuse began, Patty was six and one-half and Jill was four and one-half years old. Clarence called the children into the defendants' bedroom; at times the defendants were undressed, and at other times they were fully clothed. When clothed, the defendants ordered the girls to remove the de-

---

[2]Pseudonyms are used for the children's names. Patty was Isabel's daughter and Clarence's stepdaughter. Jill was the offspring of both Isabel and Clarence. Isabel also had two older twin daughters.

[3]Indecent assault and battery may be a lesser included offense of forcible rape of a child under sixteen years of age in violation of G. L. c. 265, § 22A. See discussion in Commonwealth v. Egerton, 396 Mass. 499, 503 n.3 (1986). The question was not argued in these proceedings.

[4]The prosecutor said she did not object to the instruction.

[5]At the charge conference, the Commonwealth did not request an instruction on statutory rape as a lesser included offense. At the conclusion of the judge's instructions to the jury, the Commonwealth requested that the lesser included offense instruction be given. The defendants objected and the judge denied the request. The following morning, before the jury resumed their deliberation, the judge gave an instruction to the jury on the lesser included offense of statutory rape, after informing counsel of her intention to do so.

fendants' clothing and then their own.[6] Patty was then told to sit or lie on the defendants' bed. Clarence approached Patty and put his finger or his penis inside Patty's vagina and "bottom" and also told Patty to put her fingers on his penis and to touch the outside of his bottom. Isabel then put her finger inside and outside Patty's vagina and bottom, touched her bottom with her tongue, and licked her daughter's breasts. Isabel also forced Patty to put her fingers inside and outside Isabel's vagina and bottom, and to touch Isabel's breasts. Clarence also raped Jill both digitally and with his penis and forced her to touch his penis and put her fingers inside his buttocks. Isabel had Jill put her fingers inside her mother's vagina and "behind" and then put her own mouth on Jill's vagina and behind.

Both defendants told Patty that she would "get in trouble" if she did not comply or if she told anyone. This scared her because she did not know what "trouble" meant. Clarence told Jill that if she told anyone he would "slap," "spank," or "punish" her. Likewise, Isabel threatened Jill with Clarence's belt if she told anyone.

In March, 1989, the Department of Social Services (DSS) removed Patty and Jill from the defendants' home and eventually placed them in the foster home of James and Janice Doran in April, 1989. While living in the foster home, the girls continued to see Isabel and Clarence on a weekly basis while under the supervision of a DSS social worker. In July of 1989, Patty disclosed to the Dorans that Clarence had sexually abused her. In August, 1989, Jill disclosed to the Dorans that her father had sexually abused her as well. DSS terminated Clarence's visitation rights, although the girls continued to see their mother on a weekly basis. Both girls told Mr. Doran that they were concerned about going back to live with their mother. It was not until June 29, 1990, that they told the Dorans that their mother had also raped them.

1. *The lesser included offense instruction.* Clarence claims that the judge erroneously charged on the lesser offense of

---

[6]The testimony was that Clarence, or Isabel, would "make me take them [the parents' clothing] off."

statutory rape[7] because the evidence did not provide the jury with a rational basis for convicting him of statutory rape while acquitting him of forcible rape. Since the defense was that the defendant did not commit *any* unlawful act against the alleged victims, the jury should have been required to decide only whether the defendant was entitled to an acquittal on the greater offense. "[T]he jury's feet [should have been] held to the fire," argues the defendant, and the judge's error — which gave the jury the alternative of convicting on the lesser offense — deprived the defendant of his right[8] to the jury's verdict free of the taint of compromise on the lesser offense. We agree and conclude that the judge should not have given the instruction on the lesser offense.

In general, a judge must give a lesser included offense instruction if, on the evidence, there is a rational basis for acquitting the defendant of the greater offense and convicting him of the lesser included offense. *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 (1986). However, there can be no basis for a lesser included offense instruction unless an element which distinguishes the greater from the lesser crime — here, nonconsent or force — is sufficiently in dispute at the trial so that a jury may rationally find the defendant not guilty of the greater and guilty of the lesser offense. *Id.* at 504. *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 660 (1989). See also *Commonwealth* v. *Curry*, 368 Mass. 195, 203 (1975) (no rational basis for a guilty verdict of the lesser crime where the jury was obliged to choose between defendant's claim that there was no battery and that the victim died as a result of a fall, and the prosecution's claim that the

---

[7]The defendants concede, as they must, that statutory rape, G. L. c. 265, § 23, is a lesser included offense of forcible rape of a child under sixteen years of age. G. L. c. 265, § 22A. See *Commonwealth* v. *Franks*, 365 Mass. 74, 78 (1974). The Commonwealth and the defendants also agree that nonconsent and force or threats of bodily injury are essential elements of forcible rape but not statutory rape. *Ibid.* See also *Commonwealth* v. *Egerton*, 396 Mass. at 503 n.3.

[8]The defendant makes no constitutional argument, and we therefore decide the case entirely on the statutory and common law of the Commonwealth.

victim died as a result of the defendant's assault).[9] Contrast *Commonwealth* v. *Ferrara*, 368 Mass. 182, 190 (1975) (testimony of a witness permitted inference of recklessness and supported the verdicts of manslaughter).

The rationale for these principles has not been discussed in our appellate decisions.[10] Federal decisions have, however, discussed the subject. In *Sansone* v. *United States*, 380 U.S. 343 (1965), after reciting that a "lesser included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser included offense," the Court added the following footnote: "This Court has long recognized that to hold otherwise would only invite the jury to pick between the felony and the misdemeanor so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Id.* at 350 & n.6. The Court concluded that there was no disputed issue of fact at the trial which would justify the instruction on the lesser offense. Compare G. L. c. 278, § 2, as inserted by St. 1929, c. 185, § 2 ("Issues of fact joined upon an indictment or complaint shall, in the superior court, be tried by a jury. . .").

In *United States* v. *Harary*, 457 F.2d 471, 478-479 (2d Cir. 1972), the court decided that "the *Sansone* holding applies to the prosecution as well as the defense. . . . [T]he prosecution cannot go to the jury, over the objection of the defendant, on both the lesser and the greater offense unless an element which distinguishes the two is disputed." *Id.* at 478. The court added, "The rationale of *Sansone* . . . recognizes that the jury, although the defendant is in fact guilty of the greater offense, may take the easier course by exercising

---

[9]If a charge on a lesser included offense is appropriate, the defendant cannot insist that the instruction not be given. See *Commonwealth* v. *Pizzotti*, 27 Mass. App. Ct. 376, 384-385 (1989) ("A judge need not fall in with a defendant's desire to gamble on the jury's acquitting him of the larger crime if that crime were put to them without the other choice").

[10]But see *Commonwealth* v. *Franks*, 365 Mass. 74, 78-79 (1974), citing G. L. c. 278, § 12, and its predecessors, Rev. St. c. 137, § 11, and St. 1784, c. 66 § 11, as the origins of the doctrine permitting a verdict on a lesser included offense.

its mercy-dispensing power and return a guilty verdict on the lesser offense, thereby shirking its sworn duty. The underlying principle, however, applies equally when the prosecution seeks an instruction on the lesser offense. The jury, if it cannot agree on the basic issue of guilt, may seek the course of least resistance in the jury room and unjustly convict on the lesser offense instead of forthrightly acquitting." *Id.* at 478-479.

The *Sansone-Harary* rationale thus protects the interests of both parties. Where the prosecutor correctly objects to a requested instruction on the lesser offense, *Sansone* precludes the jury from exercising its "mercy-dispensing power," and where the defendant correctly objects to the prosecution's requested instruction (or, as here, to the judge's instruction given sua sponte) *Harary* precludes an unjust conviction on the lesser offense.

Here the defendants objected to the judge's instruction essentially on the same ground asserted in *Harary*: that the jury should have forthrightly decided whether or not they were entitled to an acquittal on the greater offense. The judge was confronted with the pivotal issue: was there a sufficiently disputed issue of fact required for the conviction of the greater offense so that the jury could *rationally* find the defendants innocent of the greater offense and guilty of the lesser offense? We review the judge's decision to give the instruction for an abuse of discretion. See *United States* v. *Torres*, 937 F.2d 1469, 1476 (9th Cir. 1991).

Preliminarily we note that the evidence which gives rise to the required dispute must be more than some evidence, however slight, such that the defendant may be found not guilty of the greater offense and guilty of the lesser offense. See *Commonwealth* v. *Nardone*, 406 Mass. 123, 132 (1989) (defendant's conviction of assault with intent to kill set aside; "[t]his court has frequently ruled that a judge should not instruct a jury on a lesser included offense not suggested by a *reasonable view* of the evidence") (emphasis added). See also *United States* v. *Harary*, 457 F.2d at 477 ("Thus, if the court can conclude on the basis of the evidence presented

that *no reasonable man, weighing solely the evidence in light of the applicable law*, could find the defendant guilty of the lesser offense and at the same time not guilty of the greater offense, no disputed factual element could be present which would compel the court to give the lesser included offense instruction") (emphasis added).

Further, the dispute cannot be derived simply from refusing to credit the Commonwealth's evidence. See *Commonwealth* v. *Egerton*, 396 Mass. at 505 ("The judge's duty to charge on lesser included offenses, however, *is not coincident with the jury's unique prerogative as the ultimate fact finder.* The judge need not reconstruct all possible factual scenarios subsumed in the evidence presented, no matter how unreasonable, and charge the jury accordingly") (emphasis added); *United States* v. *Markis*, 352 F.2d 860, 867 (2d Cir. 1965), vacated on other grounds, 387 U.S. 425 (1967) ("The mere fact that the jury was still free to disbelieve this portion of the . . . testimony [of the witness for the government] does not elevate the issue to a truly 'disputed one. . . .' The lesser included offense charge is not required simply because the jury could exercise its power of acquitting on the greater charge for no reason at all 'in the teeth of both law and facts,' . . . there must be a rational basis for its doing so") (citations omitted). See also *Commonwealth* v. *Santo*, 375 Mass. 299, 306 (1978) (defendant charged with murder in the first degree and armed robbery; defendant argued that judge should have given lesser included offense charges of involuntary manslaughter, assault with intent to rob, and larceny. The argument was rejected because "[o]n no view of the evidence could it rationally be found that a death which resulted from a ligature around the neck and a gag in the mouth and which was accompanied by severe bruises and broken ribs was unintentionally caused").

The Commonwealth defends the judge's instructions, insisting that the issue of force was very much in dispute by reason of the defendant's cross-examination of Patty.[11] Here

---

[11]Clarence did not testify. Isabel testified that neither she nor Clarence ever sexually abused either Jill or Patty.

the Commonwealth points to Patty's admission that her parents did not threaten "to beat her, physically hurt her or send her away"; that when Clarence told her to remove her clothes, she did not refuse to do so; and that when the defendants threatened Patty with "trouble" if she did not do what she was told, Patty was uncertain what kind of trouble she would be in, but was scared. The Commonwealth seems to argue that the statutory words, "by force and against his will" require proof of physical force.

Evidence that Patty and Jill were not subjected to physical force does not, in the circumstances of this case, put the issue of force sufficiently in dispute so that a juror could rationally conclude that Clarence was innocent of forcible rape. The statutory words "are not limited solely to physical force." *Commonwealth* v. *Caracciola*, 409 Mass. 648, 651 (1991).[12] It is enough that the victims' submission was obtained by the power and authority a parent wields over a very young child, and by their fear of the consequences if they did not submit. *Ibid.*

The Commonwealth seemed to understand this until the completion of the main charge, when it belatedly requested (and was refused) the lesser included offense instruction. The Commonwealth knew or should have known that they were right the first time when they presented a case based on the intimidation, coercion and elemental fear that children four and six years of age must experience when confronted by both of their adult parents[13] ordering them to submit to incestuous acts, and threatening them with "trouble" if they "told" anyone. To argue in this context that there was a sufficient issue of force because there was no physical violence exerted on the children, is to miss the point entirely. As in *Commonwealth* v. *Nardone*, 406 Mass. at 132, no juror could *rationally* come to the conclusion from the evidence in

---

[12]*Caracciola* arises under G. L. c. 265, § 22(*b*); both § 22(*b*) and G. L. c. 265, § 22A, contain the identical phrase, "by force and against his will. . . ." The judge's charge to the jury on the issue of force was consistent with *Commonwealth* v. *Caracciola, supra.*

[13]As noted earlier, Isabel was the biological mother of both Patty and Jill; Clarence was the biological father of Jill and the stepfather of Patty.

this case that the rape of the two girls by the defendants was accomplished without "force" and with the consent of the children. "As we read the statute, the force needed for rape may, depending on the circumstances, be constructive force, as well as physical force, violence, or the threat of bodily harm." *Commonwealth* v. *Caracciola*, 409 Mass. at 653. Mere disbelief of the children's testimony regarding fear does not, as Judge Friendly wrote, "elevate the issue to a truly 'disputed' one," *United State* v. *Markis*, 352 F.2d at 867, and a genuine dispute as to force is not created by the admission that there was no physical violence. The point was clearly made in *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150 (1986): "As to proof of force, it takes no great leap of imagination to appreciate that the requisite degree of force on this two year old foster child was implicit in such a coercive environment as is presented in the circumstances. The jury need only focus on the victim's age and size reasonably to conclude that the episodes alleged occurred without her consent." We conclude that no juror could rationally find Clarence and Isabel culpable of having engaged in the sexual conduct the children described, yet not guilty of forcible rape. It was an abuse of discretion to give the lesser included offense instruction.

The prejudice to Clarence and Isabel is evident. There being no factual dispute as to any distinguishing element of the greater offense, they were deprived of their right to a verdict on the greater offense, be it one of guilt or innocence. For these reasons both defendants were wrongly convicted of statutory rape.[14]

It is to be noted that the jury's verdict on the lesser offense, statutory rape, is an implied finding of not guilty on

[14]Even though Isabel's brief makes no mention of the judge's erroneous charge to the jury, justice requires that her conviction on the statutory rape charge be set aside. See *Commonwealth* v. *Elder*, 389 Mass. 743, 746 & n.6 (1983) (appellate court may consider issues not addressed by the parties "when necessary"). Compare *Hoffer* v. *Commissioner of Correction*, 412 Mass. 450, 457 (1992) ("Where injustice might otherwise result, an appellate court properly may consider questions of law which were neither argued nor passed upon in a court or agency below").

the greater offense, forcible rape under G. L. c. 265, § 22A. *Commonwealth* v. *Franks*, 365 Mass. at 80. See also *Commonwealth* v. *Nardone*, 406 Mass. at 132-133; *Adams* v. *Commonwealth*, 415 Mass. 360, 362 (1993); G. L. c. 263, § 7 (providing protection against double jeopardy). There may, however, be a retrial of so much of the forcible rape indictment as charges statutory rape. See *Commonwealth* v. *Ferrara*, 368 Mass. at 195; *Commonwealth* v. *Harrington*, 379 Mass. 446, 455 (1980); *Commonwealth* v. *Rodriguez*, 17 Mass. App. Ct. 547, 557 (1984). See also *Price* v. *Georgia*, 398 U.S. 323, 327 (1970) ("the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense).

We comment briefly on issues raised by Isabel (no other issues were raised by Clarence) which are likely to arise in the event of a retrial.

2. *Fresh complaint testimony.* Isabel maintains that the victims' statements to their foster parents, James and Janice Doran, were not fresh because they occurred at least sixteen months after the last alleged incident of abuse. In their testimony, the Dorans both recounted the girls' statements, made on June 29, 1990, that their mother had sexually abused them. Counsel did not object to this evidence at trial, and we find no error. See *Commonwealth* v. *Johnson, ante* 211, 219-220 (1993), and *Commonwealth* v. *McKinnon*, ante 398, 399-400 (1993), where the subject is discussed and some of the many cases are collected.

There is no merit to the claim that the victims' statements were not voluntary. The testimony with regard to the circumstances of the disclosure make it clear that the jury would be warranted in finding that the statements were both spontaneous and voluntary, and thus the judge was well within her discretion in giving the issue to the jury.

3. *Expert testimony.* There was no abuse of discretion in qualifying Lea G. Elkin, a licensed and much experienced psychiatric social worker as an expert. A medical doctor was not required. See *Moore* v. *Fleet Refrigeration & Air Conditioning Co.*, 28 Mass. App. Ct. 971, 972 (1990). In addition,

there was no abuse of discretion in admitting Elkin's testimony regarding the general behavior characteristics exhibited by sexually abused children. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 630 (1989).

We have reviewed Isabel's remaining claims; they have no merit. The judge was well within her discretion in refusing to give a missing witness instruction; there was no proper foundation for the requested instruction. See *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. at 658-659. Finally, all four of Isabel's convictions for statutory rape were supported by the evidence that she raped each of her daughters twice. Each child was raped once by digital penetration of the vagina, and once by digital penetration of the rectum.

With respect to the defendants' convictions for statutory rape, the judgments are reversed, the verdicts are set aside, and the cases are remanded for new trials for a crime which is to be no greater than statutory rape, G. L. c. 265, § 23. With respect to the convictions for indecent assault and battery, the judgments are affirmed.

*So ordered.*